UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,               Cr. No. 25-20629

v.

                             HON. MARK A. GOLDSMITH

BRANDEN SMITH,

          Defendant.

_____/

**SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD
VARIANCE ON BEHALF OF BRANDEN SMITH**

**I.**
**Introduction**

Unfortunately, Mr. Branden Smith stands before this Court for possessing a firearm after having obtained a felony conviction. The sentencing guideline range is to 37 to 46 months, however a sentence within that range is greater than necessary to satisfy the goals of Section 3553(a). Mr. Smith respectfully requests a sentence below that range and supports the following in support of his request.

**II.**
**Law**

Section 3553(a) directs courts to impose a sentence that is "sufficient, *but not greater than necessary,* to comply with the purposes set forth in paragraph two." Those purposes include: (1) reflecting the seriousness of the offense; (2) promoting

respect for the law and providing just punishment; (3) protecting the public; (4) deterrence; and (5) providing the defendant with educational or vocational training, medical care or other correctional treatment in the most effective manner. Under § 3553(a), courts are further directed to consider other factors: (1) nature and circumstances of the offense and history and characteristics of the defendant; (2) need for the sentence imposed; (3) kinds of sentences available; (4) the sentencing guidelines range and any pertinent policy statement; (5) the need to avoid unwarranted sentence disparities among defendants with similar records and criminal conduct; and (6) the need to provide restitution to victims. 18 U.S.C. §3553(a)(1)-(7). When a guideline "does] not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take account of 'empirical data and national experience,'" the sentencing court is free to conclude that the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough v. United States*, 552 U.S. 85, 96, 109-10 (2007).

### A.  The Background and Characteristics of Mr. Smith And The Nature and Circumstances Of the Offense.

At twenty-one years old, the time he committed the instant offense, Mr. Smith was squarely within the age range that neuroscientists commonly describe as "emerging adulthood." Modern brain-development research demonstrates that the portions of the brain responsible for impulse control, risk assessment, emotional

regulation, and long-term decision-making continue to mature well into a person's mid-twenties.

The Supreme Court has on no less than three occasions, repeatedly recognized that youthful offenders possess diminished culpability and enhanced prospects for rehabilitation because of developmental immaturity. *Roper v, Simmons*, 543 U.S. 551 (2005), *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 132 S.Ct. 2455, 2464 (2012). As stated by the Supreme Court, "the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, even when they commit terrible crimes." *Miller v. Alabama*, 132 S.Ct. 2455, 2465 (2012*). See also Johnson*, 509 U.S. at 367 (jury was free to consider a 19-year-old defendant's youth when evaluating future dangerousness and stating that "'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and psychological damage.'") (quoting *Eddings v. Oklahoma*, 455 U.S. 104, 115 (1982)). Although the constitutional holdings in *Roper*, *Graham*, and *Miller* involved defendants under eighteen, the scientific principles underlying those decisions do not abruptly disappear on a person's eighteenth birthday. Rather, contemporary neuroscience demonstrates that many of the same characteristics identified by the Court remain present in individuals in their late teens and early twenties.

This case is particularly significant because Mr. Smith is not before the Court

for using a firearm, discharging a firearm, threatening anyone with a firearm, or committing a violent offense with a firearm. The offense conduct involves possession alone. The distinction matters. Possession offenses often involve poor judgment, immaturity, impulsivity, peer influence, and short-sighted decision-making—the very characteristics that neuroscience associates with emerging adulthood.  In its sentencing memorandum, the government refers to images taken from social media where Mr. Smith and others appear together holding firearms.  In defense counsel's view, these images reflect young men engaged in performative conduct on social media. The images suggest conformity, peer influence, and the type of group-driven decision making that modern neuroscience recognizes is particularly common among emerging adults. The fact that multiple individuals apparently shared and displayed the same firearm is more indicative of peer group behavior than of individual sophistication or leadership on Mr. Smith's behalf. Counsel does not attempt to excuse his conduct, however his age at the time of the offense provides important context for evaluating his conduct.

Additionally, Mr. Smith requests that the Court consider his upbringing.  It is clear that the family struggled with life's necessities at times and that he did not have his father's consistent presence in his life.  See PSR at ¶59.  In sum, Mr. Smith respectfully requests the Court to consider the circumstances and his background in varying down from the sentencing guideline range. *United States v. Howe*, No. 08-

6541, 2010 WL 1565505 (6th Cir. April 21, 2010) (recognizing that a district court judge can depart or vary downward based on a defendant's childhood, and that a variance under § 3553(a) is not constrained by a finding of extraordinariness).  A sentence sufficient but not greater than necessary should recognize both the seriousness of the offense and the substantial evidence that young adults possess a unique ability to mature, reform, and become productive members of society.

      **B**.     **<u>The Nature and Circumstances Of the Offense: The Government's Evidence Clearly Demonstrates Shared Possession of the Firearm and Undermines Its Request for a Top-of-the-Guidelines Sentence</u>.**

Mr. Smith takes full responsibility for his conduct and understands the serious nature of his offense. The government's sentencing memorandum repeatedly emphasizes the dangerous nature of the firearm and argues that Mr. Smith's alleged association with an alleged gang aggravates his conduct. But the government's own evidence demonstrates that this firearm was not uniquely possessed, controlled, or associated with Mr. Smith. Rather, the evidence reflects that the firearm was circulated among multiple individuals whom the government alleges were associated with the same social group.  This is evident by its prosecution of another individual in this district for possessing the same firearm that Mr. Smith has admitted to possessing.

The government's memorandum references social media photographs depicting

the possession of firearms.[1]  But the government's own investigation demonstrates that firearms moved among different individuals. Consequently, the appearance of a firearm in a photograph says little about ownership, exclusive possession, or relative culpability. At most, it demonstrates transient possession of a firearm that was apparently accessible to others. Because the firearm was being shared, transferred, displayed, and possessed by various individuals, it would be unfair to attribute the entire history and acts associated or tied to the firearm to Mr. Smith.  Accordingly, a sentence below the guideline range is warranted.

## C. The Need To Avoid Unwarranted Disparities

The government's discussion of unwarranted sentencing disparities does not discuss the prosecution of another individual for the same firearm.  This omission is significant because § 3553(a)(6) requires courts to consider unwarranted sentencing disparities among similarly situated defendants. Few comparators could be more relevant than another defendant prosecuted in the same district, during the same investigation, for conduct involving the exact same firearm. Rather than addressing that point of comparison, the government offers only the conclusory assertion that a 46-month sentence would not create an unwarranted disparity. In fact, the district

---

[1] The government asserts that a caption on Mr. Smith's Instagram claims to have caught the attention of the ATF, however the words the ATF saw were lyrics from a rap song.  These rap lyrics are in no way indicative of any crime committed by Mr. Smith but rather serves as an example of how the neuroscience research on youth, identity formation, posturing, and online self-presentation among young adults aligns with Mr. Smith's background and circumstances.

court imposed a sentence of 30 months on the defendant that pled to possessing the same firearm that Mr. Smith has admitted to possessing. While the sentence imposed by another district court is not binding on this court, it is certainly relevant to whether the requested sentence is truly consistent with sentences imposed upon similarly situated defendants.

The government may argue that §3553(a)(6) primarily addresses national disparities. While true, the Sixth Circuit has recognized that sentencing courts may consider disparities between similarly situated defendants when determining what sentence is "sufficient, but not greater than necessary." The comparison is particularly compelling where, as here, the defendants are tied to the same firearm and prosecuted in the same district.

**D. <u>The Need To Deter, Protect the Public and Punish Mr. Smiths can Be Served by a Sentence Below the Guidelines.</u>**

Mr. Smith accepts full responsibility for the offense and understands the serious nature of the offense. A sentence below the guidelines will sufficiently punish him while meeting the goals of deterrence, protection and punishment. This is particularly the case where Mr. Smith has never served more than 1 year in jail. See PSR at ¶38. In *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006), the Sixth Circuit held a district court may consider the brevity of the defendant's prior incarcerations in determining whether a downward variance is appropriate. In *Collington*, the defendant

was a career offender with a guideline range of 188 to 235 months. The district court varied downward to 120 months—by approximately 68 months. Despite the defendant's criminal history category of IV, the defendant had "never been in custody for any substantial period of time," having only been imprisoned for seven months before this crime. *Id.* Counsel respectfully requests the Court to consider the fact that Mr. Smith has not served a lengthy term of incarceration.

In terms of general deterrence, it is nearly impossible to evaluate the impact of an individual sentence on the community. Even the Department of Justice recognizes that "[t]he certainty of being caught is a vastly more powerful deterrent than the punishment." National Institute of Justice, Five Things About Deterrence (Sept. 2014) (available at https://njj.gov./five-things/Pages/deterrence.aspx). So, the real fear, the likelihood of being caught, is the actual deterrence—not the punishment of someone else. With respect to specific deterrence, Mr. Smith will be under the supervision of this Court upon his release and faces additional prison time should he violate his terms of supervision.

### III.
### Conclusion

Considering all of the factors and circumstances, Mr. Smith respectfully requests that the Court impose a sentence below the sentencing guidelines

Respectfully submitted,

**FEDERAL COMMUNITY DEFENDER OFFICE**
/s/ Natasha Webster
Counsel for Mr. Smith
 613 Abbott Street, Suite 500
Detroit, Michigan 48226
313-967-5847
Natasha_Webster@fd.org

Date: July 9, 2026

## CERTIFICATE OF SERVICE

I certify that on July 9, 2026 the foregoing document was served through the ECF system and will notify all relevant parties.